19653

The STATE, Respondent, v. Johnny JOHNSON, Appellant

(197 S. E. (2d) 823)

*J. S. Flynn, Esq.,* of Union, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Emmet H. Clair* and *Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, *for Respondent,*

July 9, 1973.

LEWIS, Justice:

This is an appeal by defendant-appellant from his conviction, and subsequent sentence of seven years, for grand larceny. He challenges (1) the admissibility of incriminating statements made by him to the officers and (2) the sufficiency of the evidence to sustain his conviction.

Appellant was arrested on March 19, 1970 and charged, along with three others, in connection with the theft, on that date, of money from the cash register of Dixie Curb Market, in Union, South Carolina. Subsequently, while being transported to Columbia for a mental examination, he had a conversation with the officers in which he made an incriminating statement. Testimony of an officer relative to this admission by appellant was received in evidence over appellant's objection. Appellant contends that this testimony was improperly admitted because he had not been advised of his rights as required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, 10 A. L. R. 3d 974.

Inquiry into the voluntariness of appellant's admission was made outside the presence of the jury. An officer testified that, while he and another officer were transporting ap-

pellant to Columbia under a court order, appellant admitted that he and three other men "were in together" when the money was taken from the Dixie Curb Market. The officer further testified that he was told that appellant had been "given a shot of morphine by a local doctor here in town prior to the time he left the jail" for the trip to Columbia, but the officer did not know at what time, if at all, the morphine had been given. He stated, however, that appellant "was very calm and very collected and he talked very intelligently" in making the statement. With reference to the *Miranda* warnings, this officer testified on cross-examination:

"Q. What did you advise him in regard to his rights?

"A. I advised, I pulled my card, my *Miranda* warning out of my billfold and he read it and I asked him if he understood it, if he was sure he knew his rights.

"Q. Did you read it to him or did he . . .?

"A. He read it himself. .

"Q. Did he read it to himself or out loud?

"A. He read it and said he did understand it.

"Q. Did you inquire as to what education he had?

"A. No, Sir, I did not.

"Q. Do you even know whether he can read or write?

"A. He stated that he could read.

"Q. Well then, of your own knowledge, you don't know whether he understood what his rights were or not because they were not explained to him by you?

"A. All I know is what he told me . . . He said he did understand it."

The card upon which the *Miranda* warnings were written was introduced in evidence, but has not been included in the record on appeal. However, no question is raised as to whether the warnings on the printed card complied with the requirements of *Miranda*. We must assume, therefore, that they did. The question then before the lower court was whether appellant understood the written warning and voluntarily and intelligently waived his rights.

As held in *United States v. Bird,* D. C., 293 F. Supp. 1265, 1274:

"Ordinarily it is not essenital that the agent advise an accused of his rights orally. Where the accused reads and understands the written advice, that is sufficient. The critical question is whether the defendant here fully understood the warning and voluntarily, knowingly, and intelligently waived her rights."

The record fails to show the educational qualifications of appellant or any other circumstance from which his ability to read and understand the written warnings could be determined, except the statement made to the officer that he had read them and understood his rights. Defendant did not avail himself of the right to testify, in the absence of the jury, concerning the voluntariness of his admissions, or to offer testimony on the issue.

The testimony presented by the State is, therefore, uncontradicted that a printed card containing the *Miranda* warnings was handed to appellant to read; that he stated that he could read; and, after apparently reading the card, acknowledged that he understood the warnings and knew his rights. The officer then told appellant that "it would be better if he would straighten himself out and get himself straight." Immediately thereafter, appellant, without further question or discussion, made the admission in question.

The foregoing facts presented by the State were sufficient to raise a presumption that appellant read and understood the warnings and intelligently waived the rights which the warnings were designed to safeguard. The burden was then upon appellant to present some facts tending to show that he did not read and understand the written warnings presented to him. This he has failed to do. See: *Bell v. United States,* 9 Cir., 382 F. (2d) 985; *United States v. Springer,* 7 Cir., 460 F. (2d) 1344.

The testimony constituted ample support for the finding by the trial judge that appellant understandingly waived his *Miranda* rights. The testimony in question was therefore properly admitted.

The remaining question concerns the contention that there was no evidence to sustain the conviction.

Testimony introduced by the State shows that appellant, his son, and two other men entered the Dixie Curb Market together on March 19, 1970, during business hours. After entering, they separated and went to different sections of the store. Appellant made a purchase in one section while his son was in a nearby area operated as a newsstand. One of the other men was seen standing at an open cash register with money in his hand. When an employee made a statement indicating that he had seen the one at the cash register, appellant became nervous and he and his son hurriedly left the building and entered a parked green Chrysler automobile. Immediately thereafter, the other two persons, including the one who had been seen at the cash register with the money, ran from the store and entered the green Chrysler in which appellant and his son were seated. All hurriedly left in the Chrysler, with the one seen at the cash register driving. A similar automobile was later found some miles away abandoned behind a filling station. Upon checking the cash register, it was found that approximately $224.00 in cash and $100.00 in checks were missing.

Appellant and his son were later stopped by a highway patrolman as they were walking along the wrong side of the highway. They were arrested and later searched. Appellant had $53.00 in his pocket in bills and $20.00 was found concealed in his sleeve. The son had $30.00 concealed in his sock. The admission subsequently made by appellant has been previously mentioned.

The evidence supports the conclusion that appellant entered the store with the others for the purpose of stealing and that he and his son assisted by placing themselves at

different locations for the purpose of dividing the attention of the employee. When the theft was discovered by an employee, appellant and his son hurriedly left, followed by the other two persons. All hurriedly left in the same automobile driven by the one who actually took the money. An automobile fitting the description of the escape vehicle was found abandoned a short time later. Subsequently appellant admitted that he and the other three were in together in the taking of the money from the Dixie Curb Market.

The foregoing sustains the inference that appellant was present, aiding and abetting in the commission of the theft and was, therefore, guilty of larceny. The trial judge properly submitted the question of appellant's guilt to the jury for determination.

Judgment affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.